UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH DAKOTA

SOUTHERN DIVISION

| | |
|---|---|
| DOCUTAP, INC.,<br><br>  Plaintiff,<br><br>vs.<br><br>URGENT CARE OF MOUNTAIN VIEW, PLLC,<br><br>  Defendant. | 4:17-CV-04148-KES<br><br>ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT |

Plaintiff, DocuTAP, Inc., filed a complaint alleging that defendant, Urgent Care of Mountain View, PLLC, breached the parties' contract by failing to pay for both electronic medical record services (EMRS) and revenue cycle management services (RCMS) provided by DocuTAP. Docket 1. Urgent Care filed a counterclaim alleging that DocuTAP breached the contract by failing to perform its duties "in a competent, reasonable, workman-like manner . . . ." Docket 7 ¶ 13. DocuTAP moves for partial summary judgment, requesting that the court find that Urgent Care breached the parties' contract by failing to pay all existing amounts due on both EMRS and RCMS services. Dockets 18, 22. DocuTAP also requests that the court find that the parties' contract bars Urgent Care's counterclaim for loss of profits. Docket 22 at 1. Urgent Care opposes the motion. Docket 26. For the following reasons, the court denies DocuTAP's motion for summary judgment.

**FACTUAL BACKGROUND**

The facts, viewed in the light most favorable to the non-moving party, are as follows:

DocuTAP and Urgent Care entered into a contract on December 20, 2013. Docket 21 ¶ 1; Docket 19-1 at 2. The contract included a service order dated December 20, 2013, a "Clinical Services and License Agreement," "Support Services Agreement," and "Patient Discharge Instructions Terms and Conditions" (collectively the Agreement), and a second service order dated June 24, 2014. Docket 19-1 at 1-11; Docket 27-1 at 12. Under the terms of the contract, Urgent Care would pay DocuTAP for EMRS and RCMS. Docket 21 ¶¶ 4-10. The first service order, dated December 20, 2013, notes that DocuTAP would provide both EMRS and RCMS services, including "insurance eligibility verification," patient portals, billing services, electronic medical records, electronic remittance advice, software updates, RCMS, and support to the clinic. Docket 19-1 at 1. Under the terms of this service order, Urgent Care agreed to pay DocuTAP $2.90 each time Urgent Care used DocuTAP's EMRS, and was required to use the EMRS a minimum of 400 times per month. *Id.*; Docket 21 ¶¶ 6-7. Also under the terms of this service order, DocuTAP would receive 7% of all revenue collected by Urgent Care using the RCMS. Docket 21 ¶ 11; Docket 27-1 at 1. Late payments would accrue interest at the rate of 1.5% per month until paid. Docket 27-1 at 6, ¶ 7.1.

The Agreement allowed Urgent Care to "request additional products and services through a Service Order and such additional products and services

will be governed by [the] Agreement." *Id.* at 5, ¶ 2.1. A second service order, dated June 24, 2014, states that DocuTAP would offer services for Urgent Care's "Wound Care Clinic Addition," in part, by "supply[ing] networks with credentialing information for Brian Bechtol and supervising physician" as well as "mak[ing] applications on behalf of [Urgent Care] for network participation" to area health plans. *Id.* at 12.

The December 20, 2013 service order states that "[t]he initial term of the Agreement is 36 months." *Id.* at 2, ¶ 8. "Term" is defined in the Agreement as including "the initial term set forth on the Service Order and any renewal terms." *Id.* at 5, ¶ 1. The Agreement also states:

> Unless either party decides not to renew this Agreement by notifying the other, in writing, at least ninety (90) days prior to the expiration of the initial term, this Agreement will automatically renew for successive twelve (12) month terms.

*Id.* at 6, ¶ 6.1. The Agreement also has a clause concerning material breaches:

> Either party may terminate this Agreement, without prejudice to any other remedy it may have, immediately and without further obligations to the other party, in the event of (i) any material breach by the other party which is not remedied within sixty (60) days of the non-breaching party's notice to the other party of the breach . . . .

*Id.* at 6, ¶ 6.2. Upon terminating the contract or the expiration of the parties' Agreement, Urgent Care was required to stop using DocuTAP's medical interface. *Id.* at 6, ¶ 6.3. Finally, there is a "limitation of liability and indemnity" provision in the Agreement that states:

> Neither party is liable for special, incidental, consequential, indirect or other similar damages, even if it has been advised of the possibility of such damages. In no event shall either party be liable

> for damages or costs incurred as a result of loss of time, loss of data, including client data, loss of profits or revenue, or loss of use of the computer system.

*Id.* at 7-8, ¶ 12.1.

In 2015, Urgent Care expressed to DocuTAP concerns regarding DocuTAP's handling of previous Medicare billing for the clinic, as well as issues with credentialing for Urgent Care's new wound care center and two newly hired providers. Docket 21 ¶ 14; Docket 25 ¶ 14; Docket 28-1 at 1-15. The parties engaged in a series of emails and telephone conferences to resolve the issues. Docket 28-1 at 1-15; Docket 19-2 at 1-4. On July 29, 2015, Urgent Care wrote to DocuTAP that "[a]s an organization, DocuTAP has failed to hold up its end of the service contract [Urgent Care] signed with you." Docket 28-1 at 3. On August 26, 2015, DocuTAP was informed that Urgent Care had "ERA's back from the beginning of June that have not been posted" and that Urgent Care found DocuTAP's failure to be unacceptable and "outright negligent." *Id.* at 4. During this period, DocuTAP continued to provide EMRS and RCMS services to Urgent Care. Docket 21 ¶ 16.

On September 4, 2015, Urgent Care told DocuTAP that "the clinic [was not] completely innocent of contributing to the issues" and that the clinic was "responsible for most of the issues" up to this date, but that Urgent Care had not been getting the services it had contracted and paid for. Docket 19-2 at 1. On December 16, 2015, Urgent Care informed DocuTAP that the company was "ready to give [its] notice . . . ." Docket 28-1 at 9. Urgent Care again voiced frustration that DocuTAP did not properly handle the credentialing process

"resulting in [its] provider not being credentialed for over 90 days . . . ." *Id.* Bryan Koch, Vice President of RCM Services for DocuTAP responded on December 23, 2015, stating that he agreed that DocuTAP had "caused the issues with credentialing for which I told you that I would also issue you a credit. That said amount needs to be determined as well once I understand the loss revenues for your practice." *Id.* at 12. An email that same day from Urgent Care to Eric McDonald, president of DocuTAP, notes that Urgent Care had "lost hundreds of thousands of dollars for timely filing and now the latest, mistakes with getting [Urgent Care] providers credentialed." *Id.* at 13.

On March 21, 2016, Brian Bechtol, the CEO of Urgent Care, sent a letter to McDonald, stating that the letter was to serve "as official notification of [Urgent Care's] 90 day notice to discontinue the RCM management agreement" between the parties. Docket 27-2 at 1. Bechtol informed DocuTAP that Urgent Care wished to continue use of the EMRS services. *Id.* 60 days later, on May 20, 2016, Bechtol sent another email to McDonald, notifying DocuTAP that Urgent Care would now be discontinuing use of the EMRS services as well. Docket 27-3 at 1. Bechtol informed McDonald that Urgent Care would "no longer be using that product as of July 1, 2016." *Id.* Finally, on May 25, 2016, Bechtol sent a follow-up email to McDonald, informing DocuTAP that the notice of separation would be extended to July 31, 2016 for both RCMS and EMRS services. Docket 27-4 at 1. Since July 31, 2016, Urgent Care has ceased using both DocuTAP's RCMS and EMRS services. Docket 24 ¶ 16. Invoices from

March 10, 2016 to February 8, 2017, have not been paid by Urgent Care. Docket 19-3 at 1-19.

## SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate if the movant "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party can meet its burden by presenting evidence that there is no dispute of material fact or that the nonmoving party has not presented evidence to support an element of its case on which it bears the ultimate burden of proof. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). The moving party must inform the court of the basis for its motion and also identify the portions of the record that show there is no genuine issue in dispute. *Hartnagel v. Norman*, 953 F.2d 394, 395 (8th Cir. 1992) (citation omitted).

To avoid summary judgment, "[t]he nonmoving party may not 'rest on mere allegations or denials, but must demonstrate on the record the existence of specific facts which create a genuine issue for trial.' " *Mosley v. City of Northwoods*, 415 F.3d 908, 910 (8th Cir. 2005) (quoting *Krenik v. Cty. of Le Sueur*, 47 F.3d 953, 957 (8th Cir. 1995)). Summary judgment is precluded if there is a genuine dispute of fact that could affect the outcome of the case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). When considering a summary judgment motion, the court views the facts and the inferences drawn from such facts "in the light most favorable to the party opposing the motion."

6

*Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (quoting *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962)).

## DISCUSSION

### I. Breach of Contract

Both DocuTAP and Urgent Care allege breach of contract claims. Under South Dakota law,[1] the elements of a breach of contract are: "(1) an enforceable promise; (2) a breach of the promise; and, (3) resulting damages." *Bowes Constr., Inc. v. S.D. Dep't of Transp.*, 793 N.W.2d 36, 43 (S.D. 2010) (citing *Guthmiller v. Deloitte & Touche, LLP*, 699 N.W.2d 493, 498 (S.D. 2005)). A material breach occurs if the breach threatens to "defeat the very object of the contract." *Thunderstik Lodge, Inc. v. Reuer*, 585 N.W.2d 819, 824 (S.D. 1998) (internal quotation omitted). "It is well established that a material breach of a contract excuses the non-breaching party from further performance." *FB & I Bldg. v. Superior Truss & Components*, 727 N.W.2d 474, 478 (S.D. 2007) (citation omitted); *see also* Restatement (Second) of Contracts § 237 (Am. Law Inst. 1981) (providing that an uncured material breach relieves the non-breaching party of an obligation to render further performance). "A material breach of contract allows the aggrieved party to cancel the contract and recover damages for the breach. However, if the breach is not material, the aggrieved

---

[1] The court applies South Dakota substantive law to these claims. *See, e.g.*, *Hiatt v. Mazda Motor Corp.*, 75 F.3d 1252, 1255 (8th Cir. 1996) (citing *Erie R.R. Co. v. Tompkins*, 304 U.S. 64 (1938)). The parties do not dispute that under the terms of its contract, South Dakota substantive law governs. *See* Docket 21 ¶ 25; Docket 25 ¶ 25.

7

party may not cancel the contract but may recover damages for the nonmaterial breach." *Miller v. Mills Const., Inc.*, 352 F.3d 1166, 1171-72 (8th Cir. 2003) (internal citation omitted).

"Whether a party's conduct constitutes a material breach of contract is a question of fact." *Icehouse, Inc. v. Geissler*, 636 N.W.2d 459, 465 (S.D. 2001); *see also Lafarge North America, Inc. v. Discovery Group LLC*, 574 F.3d 973, 982 (8th Cir. 2009) ("Materiality is a question of fact for the jury . . . ."); *Moe v. John Deere Co.*, 516 N.W.2d 332, 335 (S.D. 1994) (noting that the determination of whether a party has breached a contract presents a question of fact for the fact finder). As the moving party, DocuTAP bears the burden of identifying the portion of the record that shows there is no genuine factual issue in dispute to support its claims. *Celotex Corp.*, 477 U.S. at 323.

### A. DocuTAP's Breach of Contract Claim – EMRS and RCMS

DocuTAP argues that Urgent Care breached the parties' contract by not paying for EMRS and RCMS services from 2016-2017. Docket 22 at 1-3. Urgent Care argues that DocuTAP breached the contract first by failing to provide proper credentialing and other billing services in a timely and competent manner, thus excusing Urgent Care from performing under the contract and paying its invoices. Docket 26 at 8-10. Urgent Care also argues that it properly terminated the contract by July 31, 2016. *Id.* at 5.

The parties' contract states that the initial term of the Agreement is 36 months. Docket 27-1 at 2, ¶ 8. The Agreement will automatically renew unless a party gives notice "at least ninety (90) days prior to the expiration of the

initial term." *Id.* at 6, ¶ 6.1. The Agreement was signed December 20, 2013. *Id.* at 2. Thus, the Agreement would have automatically renewed December 20, 2016, unless a party gave notice at least 90 days prior. Urgent Care sent notice to DocuTAP on March 21, 2016, stating that it would be terminating the RCMS part of the contract. *See* Docket 27-2. Urgent Care also sent notice to DocuTAP on May 20, 2016, stating that it would be terminating the EMRS part of the contract, and on May 25, 2016, stating that the clinic would cease using all DocuTAP services on July 31, 2016. *See* Dockets 27-3, 27-4.

The parties dispute when, if ever, Urgent Care terminated the contract or provided proper notice of a breach of contract. This disagreement centers on a factual dispute concerning if DocuTAP materially breached the parties' contract. Urgent Care argues that DocuTAP breached the parties' contract when DocuTAP allegedly could not provide RCMS billing for the new wound care clinic, could not get providers credentialed at the new wound care clinic, and failed to provide other RCMS services in a timely and competent manner. *See* Docket 26 at 9. If DocuTAP's alleged failures are a material breach of the Agreement and DocuTAP was notified and failed to remedy this breach, then Urgent Care is excused from further performance. If DocuTAP's alleged breach was not material, then Urgent Care's performance would not be excused. When viewing the facts and inferences in the light most favorable to Urgent Care, there is a genuine dispute of material fact as to whether DocuTAP breached the contract, when the breach occurred, if the breach was material, and if proper notice of the breach was provided by Urgent Care. Here, whether DocuTAP's

9

services were sufficient under the contract is a question of fact that must be decided by a jury. This question of fact directly affects whether Urgent Care's alleged breach of not paying for EMRS and RCMS is excused.

This factual dispute also affects at what time Urgent Care terminated the Agreement between the parties. For example, if DocuTAP materially breached the contract and did not remedy the breach, then under the terms of the Agreement, after "sixty (60) days of the non-breaching party's notice to the other party of the breach," Urgent Care may terminate the Agreement immediately. Docket 27-1 at 6, ¶ 6.2. If DocuTAP did not materially breach the contract, then under the terms of the contract, Urgent Care may not terminate the contract until the expiration of the initial term, effective December 20, 2016. *See id.* at 6, ¶ 6.1. Resolution of these issues requires a fact finder to determine what party breached first and when the contract was terminated. Thus, because issues of material fact remain, DocuTAP's motion for summary judgment on its breach of contract claim is denied.

**B.     DocuTAP's Breach of Contract Damages**

Next, genuine issues of material fact remain on the amount of damages, if any, owed to DocuTAP on its two breach of contract claims. DocuTAP seeks damages of $86,508.98 in unpaid RCMS charges, not including $40,248.35 in interest, and $16,388.63 in unpaid EMRS charges, not including $6,574.79 in interest. Docket 22 at 3. Urgent Care disputes this amount of damages, arguing that the clinic properly terminated the parties' contract. Docket 26 at 7. As discussed earlier, the amount of damages, if any, owed to DocuTAP is

dependent on whether a jury finds DocuTAP materially breached the contract, when the breach occurred, and if the breach was remedied within 60 days of Urgent Care providing notice to DocuTAP of the breach. Similarly, if the finder of fact decides that DocuTAP did not materially breach the contract, then Urgent Care may be liable for the monthly invoices on both EMRS and RCMS services until the expiration of the initial term of the Agreement, effective December 20, 2016. These factual issues, paired with DocuTAP's admission that it owes credit to Urgent Care for its failures under the contract, create genuine issues of material fact as to what amount of damages DocuTAP may be owed, if any. *See* Docket 28-1 at 12. Thus, because genuine issues of material fact remain, the motion for summary judgment on both of DocuTAP's breach of contract claims is denied.

## II. Urgent Care's Breach of Contract Counterclaim

Finally, DocuTAP requests that the court grant summary judgment and determine that the parties' Agreement bars Urgent Care's counterclaim for loss of profits. Docket 22 at 1. "The construction of a written contract is a question of law." *Alverson v. Nw. Nat. Cas. Co.*, 559 N.W.2d 234, 235 (S.D. 1997) (citation omitted). The language of the contract is given its "plain and ordinary meaning" unless the language is ambiguous. *Am. State Bank v. Adkins*, 458 N.W.2d 807, 809 (S.D. 1990) (citing Restatement (Second) of Contracts § 202(3) (Am. Law Inst. 1981)). "A contract is ambiguous when application of rules of interpretation leave a genuine uncertainty as to which of two or more meanings is correct." *Ziegler Furniture & Funeral Home, Inc. v. Cicmanec*, 709 N.W.2d 350,

11

355 (S.D. 2006) (internal quotation omitted). No ambiguity exists, however, if the parties simply "differ as to the interpretation of the contract." *Cain v. Fortis Ins. Co.*, 694 N.W.2d 709, 713 (S.D. 2005) (internal quotation omitted). Thus, when the meaning of a contract is plain and unambiguous, "the intent of the parties can be derived from within the four corners of the contract." *Vander Heide v. Boke Ranch, Inc.*, 736 N.W.2d 824, 835 (S.D. 2007) (citation omitted). When a contract is unambiguous, a court cannot go beyond the provisions of the contract. *Gettysburg Sch. Dist. 53-1 v. Larson*, 631 N.W.2d 196, 200 (S.D. 2001).

Here, the contract between the parties is not ambiguous. Under the terms of the Agreement, neither party can be held liable for "special, incidental, consequential, indirect or other similar damages, even if [the party] has been advised of the possibility of such damages." Docket 27-1 at 7-8, ¶ 12.1. The next sentence states, "[i]n no event shall either party be liable for damages or costs incurred *as a result of* loss of time, loss of data, including client data, loss of profits or revenue, or loss of use of computer system." *Id.* (emphasis added). The plain language of this section is clear that no claim can be made for the listed types of damages, such as special, incidental, indirect, or consequential damages. This includes damages "as a result of" listed occurrences like loss of time or loss of profits. "As a result of" is limiting, qualifying language that modifies the term "damages." The plain language of the contract does not bar loss of profits damages or loss of time damages, but bars damages "as a result of" those occurrences. For example, incidental damages as a result of loss

time or as a result of loss of profits is barred by the plain language of the contract.

Also, "applying the general principle of contract construction that no provision of a contract should be interpreted in a manner that would render it surplusage," suggesting that loss of profit damages are barred by the contract would render the qualifying language "as a result of" mere surplusage and of no legal significance. *Dunne v. Libbra*, 330 F.3d 1062, 1063 (8th Cir. 2003). If the parties sought to preclude those damages, the language "as a result of" would have been omitted. A "contract is to be read as a whole, making every effort to give effect to all provisions." *Black Hills Excavating Servs., Inc. v. Retail Const. Servs., Inc.*, 877 N.W.2d 318, 325 (S.D. 2016) (internal quotation omitted). This court will give effect to every word of the contract, including the limiting language "as a result of." Thus, a party cannot make a claim against DocuTAP for damages as a result of loss of profits, but the contract does not state that loss of profits damages are precluded.

Finally, South Dakota allows a party to recover loss of profits for a breach of contract. *See Stern Oil Co., Inc. v. Brown*, 908 N.W.2d 144, 151 (S.D. 2018) (citation omitted). The South Dakota Supreme Court has found that "while it is true that lost profits may fall within the larger category of consequential damages, lost profits that flow directly from the contract itself are properly characterized as direct damages." *Id.* at 153. This is applicable to a business relationship, such as the relationship between Urgent Care and DocuTAP, where a benefit of the bargain includes the service of one party

collecting profits and revenue for the other party. Such damage is not collateral or indirect economic harm resulting from the contract, but is instead damage reflecting Urgent Care's direct "loss of the benefit of the bargain." *Id.* Because the contract does not bar Urgent Care from claiming direct loss of profit damages, material questions of fact remain as to whether DocuTAP materially breached the contract and if so, what amount of loss of profit, if any, Urgent Care can recover. Thus, because Urgent Care's breach of contract counterclaim for loss of profits is not barred by the parties' contract as a matter of law, DocuTAP's motion for summary judgment as to Urgent Care's counterclaim is denied.

## CONCLUSION

DocuTAP is not entitled to summary judgment as a matter of law because genuine issues of material fact exist on both DocuTAP's breach of contract claims and Urgent Care's counterclaim. Thus, it is

ORDERED that DocuTAP's motion for summary judgment (Docket 18) is DENIED.

Dated August 2, 2019.

BY THE COURT:

/s/ *Karen E. Schreier*
KAREN E. SCHREIER
UNITED STATES DISTRICT JUDGE